# Hereford *v.* Combs.

## *Action for Slander.*

1. *Pleading and practice; sufficiency of judgment on demurrer.* To constitute a valid and sufficient judgment upon demurrers, there should be a formal entry of submission on the demurrers to specified pleadings, a recital of the consideration thereof and a formal adjudication. A recital in the judgment entry that "thereupon the defendant demurs to the complaint and upon consideration thereof the said demurrers are overruled and disallowed," is no sufficient or

24

valid judgment of the court upon the demurrers; and such ruling will, therefore, not be reviewed on appeal.

2. *Slander; plea of the truth of the charge; burden of proof.*— In an action of slander, wherein the plaintiff complains that the defendant charged him with perjury, if the defendant pleads the truth of the charge in bar of the action, the burden is cast upon him to support said plea by such proof as would be required to convict the plaintiff on an indictment for that offense; and when this is done, the jury ought then to weigh the evidence in support of the plea as they would in other civil suits and determine whether or not they are reasonably satisfied of the truthfulness of the charge.

3. *Same; admissibility of evidence; res gestae.*—In an action of slander, where the plaintiff complains that the defendant had stated that he, the plaintiff, swore a lie in the trial of a certain case, upon a witness testifying that he heard the defendant make such statement, it is competent to prove the manner assumed by the defendant when the declaration complained of was made; such manner being part of the *res gestae.*

4. *Same; same.*—In such a case, where the defendant interposed a special plea setting up as a defense the truth of the accu-. sation he had made against the defendant, it is competent for the plaintiff to introduce evidence to sustain his character for truth and veracity; such plea putting in issue the plaintiff's character in this respect.

5. *Same; same.*—In such a case, it is not competent for the plaintiff to prove that it was largely circulated in the community where he lived that the defendant had charged him with swearing to a lie, in the absence of proof that the defendant himself or some one at his instance, caused the charge to be circulated.

6. *Same; same.*—In such a case, where the plaintiff complains of the defendant having stated that he swore to a lie, when being examined as a witness in a criminal case, it was shown that the defendant in the criminal case was the plaintiff's son-in-law and was indicted for the larceny of the defendant's hogs. The defendant as a witness for the State testified that on the preliminary trial of the criminal case, the plaintiff had sought to effect with him a compromise of the prosecution; while the plaintiff as a witness for the defendant in the criminal case testified that the defendant in the slander suit offered to compromise the suit. It was this statement that was characterized by the defendant as being a lie. *Held:* That in such case it was competent for the defendant, if he knew the fact, to testify that a third party

came to him as the representative of the plaintiff, at the latter's request, and sought to compromise the prosecution.

7. *Same; same.*—In such a case, it is immaterial to any issue involved therein that a witness examined in behalf of the defendant was a surety upon the appearance bond of the defendant in the criminal prosecution; and, therefore, evidence in reference thereto is irrelevant and inadmissible.

8. *Same; same.*—In such a case, the fact as to whether or not the plaintiff swore in the criminal prosecution that he had talked to the defendant before the preliminary trial, is immaterial to any issue involved, and evidence in reference thereto is inadmissible.

9. *Same; same.*—In such a case, it is competent for the plaintiff, on the cross examination of the defendant as a witness, to show that the latter was the prosecutor in the criminal prosecution and knew at that time that the defendant therein was a son-in-law of the plaintiff in the present suit; and also to show that he had done a great deal of talking about the plaintiff's having sworn falsely in that case.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellee, John Joseph Combs, against W. F. Hereford. The complaint in the action was in words and figures as follows: "1. The plaintiff claims of the defendant two thousand dollars damages for falsely and maliciously charging the plaintiff with perjury, by speaking of and concerning him in the presence of divers persons in substance as follows: 'Joe Combs (meaning the plaintiff) swore to a lie' on the 3d day of June, 1898. 2. The plaintiff claims of the defendant the further sum of two thousand dollars damages, for falsely and maliciously charging the plaintiff with perjury by speaking of and concerning him in the presence of divers persons in substance as follows: 'Joe Combs, (meaning and referring to the plaintiff) swore to a lie' referring to a trial that took place in the circuit court of Madison county, Alabama, at the regular May term, 1898, of said circuit court, on the trial of a cause in which the State of Alabama was plaintiff and Ed B. Stone was defendant, on charge of grand lerceny, and in said cause plaintiff was examined as a witness on the 3d day of June, 1898. 3. The plaintiff claims of the defendant the further sum of two thousand dollars

damages, for maliciously and falsely, in the presence and hearing of divers other citizens, on the 3d day of June, 1898, and at different times thereafter up to the bringing of this suit, while speaking of the trial of the State of Alabama against Ed. B. Stone, on an indictment charging grand larceny, had at the May term, 1898, of the circuit court of Madison county, Alabama, and referring to the testimony of plaintiff on said trial, said and charged in substance as follows: 'Joe Combs (meaning the plaintiff) had perjured himself.' 4. The plaintiff claims of the defendant the further sum of two thousand dollars damages for that in certain conversations which the defendant had with various and divers good citizens, between the 3d day of June, 1898, and the 31st day of December, 1898, falsely and maliciously charged the plaintiff with perjury by speaking of and concerning the plaintiff in substance as follows: 'Joe Combs (meaning the plaintiff) swore a lie.' 5. The plaintiff claims of the defendant the further sum of two thousand dollars damages for falsely and maliciously, on divers occasions and in the presence of many good and worthy citizens, on or about the 3d day of June, 1898, when he (the defendant) spoke of the testimony of the plaintiff in the trial of the case of the State of Alabama against E. B. Stone, at the May term, 1898, of the circuit court of Madison county, Alabama, charged that the plaintiff had in his testimony committed perjury, in substance as follows: 'Joe Combs (meaning the plaintiff) knew he swore a lie in that case.' "

To each count of the complaint the defendant separately demurred upon the ground that the language as set out in each of said counts as constituting the ground of action was not such as to render the defendant liable for damages. The judgment entry showing the ruling upon this demurrer, was as follows: "Thereupon the defendant demurs to the complaint and upon consideration thereof the said demurrers are overruled and disallowed." The defendant filed three pleas, the substance of which is set out in the opinion.

On the trial of the cause, it was shown that the alleged slanderous statement made by the defendant Hereford was made concerning the testimony of the plaintiff while

being examined as a witness on the trial of his son-in-law, Ed Stone, under an indictment for the larceny of hogs belonging to W. F. Hereford. On the trial of the said Stone for the larceny of the hogs, W. F. Hereford as a witness for the State testified that on the preliminary trial of said Stone, J. J. Combs, the plaintiff in the present suit, came to him and sought to compromise the prosecution against said Stone on the charge of larceny.

J. J. Combs as a witness for the defendant in the case of the *State v. Stone* testified that W. F. Hereford approached him and proposed a compromise of the transaction. It was then shown that at the time of giving this testimony the said W. F. Hereford stated in open court that the said J. J. Combs had just "swore to a lie." It was further shown by the evidence that the said Hereford made a like statement to several different witnesses and on several different occasions.

The defendant Hereford as a witness in his own behalf admitted to the making of such statement, and further testified to facts showing that the said Combs did come to him and offer to compromise the prosecution and that he, Hereford, would not do so. There were several other witnesses introduced by the defendant whose testimony was that the said Combs came to the defendant Hereford and proposed to compromise the prosecution against Stone; and that notwithstanding these facts, Combs testified as a witness in the case of *State v. Stone* that the defendant proposed the compromise to him.

Dr. McKelvey as a witness for the plaintiff, testified that he heard the defendant say that Combs swore a lie on the Stone trial, and that at the time of making this statement, the defendant was in the court house yard on the day of the trial of said Stone. This witness was then asked by the plaintiff's attorney, the following question: "What was Hereford's manner when he said Combs swore a lie?" The defendant objected to this question as calling for illegal, immaterial and incompetent evidence. The court overruled the objection, and the defendant duly excepted thereto. The witness answered that "Hereford was gesticulating and was very rough." The defendant moved to exclude this answer, upon the grounds that it was immaterial, illegal and incompetent

testimony, and duly excepted to the court's overruling his motion.

Upon the examination of several witnesses for the plaintiff, they were each asked the following question: "Do you know Combs' general reputation for truth and veracity in the community where he lives, and if so, is it good or bad?" The defendant objected to each of these questions as asked the several witnesses, on the ground that it called for illegal, and incompetent evidence, and because no evidence had been introduced tending to impeach Combs' character. The court overruled the objection to each of the questions, and the defendant separately excepted to each of such rulings. Each of the several witnesses to whom said questions were propounded testified that his character for truth and veracity was good.

During the examination of several of the witnesses, each of them was asked the following question: "Was it or not generally circulated in the community in which Combs lived that Hereford had charged Combs with swearing to a lie on the Stone trial?" The defendant objected to each of such questions, because it called for hearsay, illegal and incompetent evidence. The court overruled each of the objections, and to each of such rulings the defendant separately excepted.

During the examination of the defendant Hereford as a witness in his own behalf and after he had testified to the making of the statement that the plaintiff in the present suit swore to a lie on the trial of Stone for the larceny of his hogs, he was then asked by his counsel the following question: "Did or not James E. Popejoy come to you on the day of the preliminary trial of Ed Stone at Newmarket at the request of Combs, and ask you for Combs if you would not compromise?" The court sustained the plaintiff's objection to this question, and to this ruling the defendant duly excepted. Upon the cross-examination of the defendant as a witness, he was asked by the plaintiff's counsel if he was not the prosecutor of Ed Stone when he was tried for stealing his hogs? The defendant objected to this question as calling for illegal and incompetent evidence, and

duly excepted to the court's overruling his objection. Upon the witness answering that he was, he was then asked the following question by the plaintiff's attorney: "When you prosecuted Stone you knew he was Comb's son-in-law, did you not?" The defendant objected to this question upon the same grounds as were interposed to the other, and duly excepted to the court's overruling his objection.

F. G. Hereford, who was the son of the defendant, W. F. Hereford, testified as a witness for the latter, that Combs came to him on the day of the preliminary trial of Stone, and asked him to get his father, the defendant, to compromise. That upon being told that he could not do so, Combs asked him who was a good man to go to his father with such a proposition, and upon his telling him that James E. Popejoy would be, Combs then went to Popejoy. On the cross-examination of this witness, he was asked if he was not on Stone's bond. The defendant objected to this question as calling for illegal and irrelevant evidence, and duly excepted to the court's overruling his objection.

James E. Popejoy as a witness for the defendant testified that Combs came to him on the day of the preliminary trial of Ed Stone on the charge of larceny, and requested him to go to the defendant Hereford and see if he could not get him to compromise the Stone case. That he went to Hereford, but he declined to compromise it.

Upon the examination of the plaintiff as a witness in rebuttal, he was asked the following question: "Did you or not swear on the Stone trial that you had talked to Frank Hereford before the preliminary trial?" The defendant objected to this question as calling for illegal and incompetent testimony, and duly excepted to the court's overruling his objection. The witness answered that he did. The plaintiff further testified on his examination in rebuttal, that he did not make the statement during his examination as a witness on the trial of Stone; that the defendant in this suit, Hereford, came to him on the day of the preliminary examination and proposed a compromise; that he had no remembrance of so testifying in the Stone case.

The general charge of the court to the jury was, at the request of the plaintiff, given in writing; but it is not necessary, under the opinion on the present appeal, to set out this charge at length.

At the request of the plaintiff, the court gave to the jury the following written charges, to the giving of each of which the defendant separately excepted: (1.) "If the jury believe the evidence they must find a verdict on plea number three for the plaintiff." (2.) "If the jury believe from the evidence that the alleged perjury was committed by the plaintiff on the trial of Ed Stone at the May term of the circuit court in 1898, under an indictment for hog stealing, then the evidence must satisfy the jury that the plaintiff, Joe Combs, willfully and corruptly swore falsely in regard to a material matter or thing on trial, and if the evidence fails to satisfy the jury that the plaintiff did swear willfully and corruptly in regard to a material matter, then your verdict must be in favor of the plaintiff." (3.) "Before the jury can, under the law, render a verdict in favor of the defendant, they must be satisfied from the evidence that the plaintiff willfully and corruptly swore falsely in regard to some material matter or thing." (4.) "The defendant pleads justification, that means that the defendant says that the plaintiff when a witness on the trial of Ed Stone willfully and corruptly swore falsely on a material matter. The law requires that the evidence must satisfy the jury that the plaintiff willfully and corruptly swore, and that on a material matter; and if the evidence fails to satisfy the jury that the plaintiff either swore willfully and corruptly false, or that the matter was material, then your verdict must be for the plaintiff." (5.) "In an action like this, if the defendant pleads the truth of the charge of perjury that he made against the plaintiff, he must introduce such proof in support of his plea as fairly and reasonably satisfies the jury that the plaintiff did on a material matter, willfully and corruptly swear falsely, and if he fails to do this, then your verdict must be for the plaintiff." (6.) "In this case the defendant pleads the truth of his charge of perjury: if the evidence fails to sustain the plea, then the jury have the right under the law to look to this failure as an

[Hereford v. Combs.]

aggravation of the damages in behalf of the plaintiff."
(7.) "It is for the jury to determine from the man-
ner of the witnesses on the stand and all the circum-
stances surrounding, whether a witness is influenced in
his evidence by ill will or prejudice, and give the evi-
dence of such witness just such weight and credibility
as justice requires."

There were verdict and judgment for the plaintiff,
assessing his damages at $275. The defendant appeals,
and assigns as error the several rulings of the trial court,
to which exceptions were reserved.

TANCRED BETTS, for appellant, cited 13 Amer. &
Eng. Encyc. of Law, pp. 401, 428, 440, 476; *Northcutt
v. State,* 43 Ala. 330.

RICHARDSON & BANKHEAD, *contra.*—Justification
was pleaded as a defense. If this plea is not estab-
lished the failure increases the damage.—*Pool v. Dev-
ers,* 30 Ala. 672; *Shelton v. Simmons,* 12 Ala. 466; *Rob-
inson v. Drummond,* 24 Ala. 174; *McLaughtery v. Coop-
er,* 19 S. E. Rep. 415; *Sprine v. Cooper,* 16 Ala. 791;
*Latham v. Berry,* 1 Porter, 110; *Slattery v. Whitta-
ker,* 8 S. W. Rep. 829; *Lea & wife v. Robinson,* 1 Stew-
art, 138; *Adams v. Ward,* 1 Stewart, 42; 13 Amer. &
Eng. Encyc. Law (1st edition; note perjury), p. 341,
authorities cited.

In an action of slander the plea of justification puts
in issue the general character of plaintiff, and the plain-
tiff has the right to introduce evidence to prove him-
self a man of good and unimpeached character, and
this evidence the plaintiff can introduce before any evi-
dence is offered by defendant. The plea of justifica-
tion republishes the slander.—*Rhodes v. James,* 7 Ala.
574; Greenleaf on Evidence, 61, §§ 54, 55; 2 Starkie,
on Ev., 367, 370; 13 Amer. & Eng. Encyc. Law, Title
"Libel and Slander," p. 396; *Bryan v. Guss,* 27 Ga. 378;
*Barton v. March,* 6 Jones L. (N. C.) 409; *State v. Lyon,*
89 N. C. 568; *Sharp v. Stephenson,* 12 N. C. 348; *Wal-
ters v. Smoot,* 11 N. C. 315.

TYSON, J.—We cannot review the assignments of
error based upon the action of the court in overruling

the demurrers to the complaint, for the reason that the record contains no judgment by the court to that effect.—*Cartlidge v. Stone*, 124 Ala. 596; *McDonald v. Railway Co.*, 123 Ala. 227, and authorities there cited.

Section 1439 provides that "every accusation of false swearing presumptively imports a charge of perjury." This statute would seem to be a sufficient answer to the objections urged against the allegations of the various counts of the complaint.

The defendant filed three pleas to the complaint and each count thereof. The first plea is the general issue; the second, that the statements alleged to have been made by the defendant defamatory of the plaintiff are true; and the third, that the statements made by defendant to the effect that the plaintiff had sworn to a lie, were made in open court by him, in denial of a statement made by the plaintiff while testifying as a witness in a certain cause.

A great many exceptions were reserved by the defendant during the trial, and there are a large number of assignments of error.

An examination of the evidence discloses that the defendant while testifying as a witness in behalf of himself in this case admitted that he had stated to various persons that plaintiff had sworn to a lie while being examined as a witness on the trial of his (plaintiff's) son-in-law, Ed Stone, charged with the larceny of some hogs belonging to the defendant, in the circuit court on the 3d day of June, 1898. These facts had been proven by the plaintiff, by a number of witnesses examined in this cause. In short, they were undisputed facts, proven in the case.

The truth of the words spoken or the circumstances under which they were spoken, if established by the evidence, merely go in mitigation of the damages.—Code, § 1438.

Notwithstanding the truth of the words spoken may be given in evidence under the general issue by the defendant, the burden of proof is upon him to reasonably satisfy the jury of their truth.—Code, §§ 1437, 1438.

[Hereford v. Combs.]

In *Spruil v. Cooper*, 16 Ala. 791, it was said: "In an action of slander charging the plaintiff with perjury, if the defendant plead the truth of the charge in bar of the action, he must introduce such proof in support of his plea as would be required to convict the plaintiff on an indictment for that offense.—*Wooddcck v. Keller*, 6 Cow. 118; 16 Wend. 601; 7 Blackf. 83. The extent of this rule, however, is that the defendant must sustain his plea by two witnesses, at least, or by one witness and corroborating circumstances. When this is done, the jury are then to weigh the evidence in support of the plea, as they would in any other civil suit." It is true this opinion was delivered prior to the enactment of the act which now constitutes section 1438 of the present Code. But this provision of the Code does not change the principle. The failure of the defendant to prove the truth of his plea of justification to the reasonable satisfaction of the jury was an aggravation of the damages.—*Robinson v. Drummond*, 24 Ala. 174; *Pool v. Devers*, 30 Ala. 672; *Lear v. Robertson*, 1 Stewart, 138.

The court, being requested, reduced his general charge to the jury to writing. It appears to be copied in full in the record. We have examined it, and, considering it as a whole, as the jury were bound to consider it, it presented the law of the case correctly to the jury. As to that portion of the charge which instructed the jury "if from all the evidence you are reasonably satisfied that the statement made by defendant against the plaintiff is true, you should find for the defendant, and in that event, the form of your verdict would be, 'we, the jury, find for the defendant'," it cannot be said to be erroneous as the second plea is a plea in bar to the entire complaint, and does not limit the matters of defense to merely mitigating the amount of damages recoverable. As a plea in bar it presents an immaterial issue, but issue having been taken on it the defendant is entitled to have the issue raised under it passed upon by the jury. However, under the principles we have announced, the written charges given at the request of the plaintiff involve no error of prejudice to the defendant.

We shall now take up the assignments of error predicated upon exceptions reserved to the admission and exclusion of evidence.

There was no error in allowing the witness, Dr. McKelvey, in response to the question by plainttff, "what was Hereford's manner when he said Combs swore to a lie?" to answer that "Hereford was gesticulating and very rough," against the objection that it was illegal, immaterial and incompetent. This was a part of the *res gestae.*

When the defendant filed his plea alleging the truth of the accusation he had made against the plaintiff to the effect that he (plaintiff) had sworn to a lie, he put in issue the plaintiff's character for truth and veracity, and it was perfectly competent for the plaintiff to introduce evidence to sustain his character in that respect.—*Rhodes v. James,* 7 Ala. 574; 13 Am. & Eng. Encyc. Law, p. 396, and authorities cited in note 5.

It was improper to permit the plaintiff to prove that it was generaly circulated in the community in which he lived, that the defendant had charged him with swearing to a lie, or that the report was generally circulated in that community, in the absence of proof that the defendant himself or some one else at his instance caused the charge to be circulated. The defendant can only be be held liable for the damages occasioned by his own communication.—13 Am. & Eng. Encyc. Law, p. 375, and notes 3 and 4 on p. 490. They who repeat his defamatory words are liable for the wrong committed by them, but the originator of the slander is only liable for such damages as result directly from his own utterances.—*Ib.,* p. 442.

The defendant should have been permitted to testify, if he knew the fact, that Popejoy came to him, at the request of the plaintiff, to ascertain if he would compromise the prosecution instituted by him against the plaintiff's son-in-law, for the larceny of his hogs.

It was immaterial to any issue in the case that F. G. Hereford, a witness examined in behalf of the defendant, was a surety upon the appearance bond of Stone. It did not tend to show that he entertained any bias in

favor of the defendant, or prejudice against the plaintiff.

So too was the question asked the plaintiff "Did you or not swear on the Stone trial that you had talked to Frank Hereford before the preliminary?"

We are of the opinion that it was not error to allow the plaintiff on cross-examination of the defendant, as a witness, to show that he (defendant) was the prosecutor of Stone, and that he knew, at that time, he was the son-in-law of the plaintiff, and also to show by him that he had done a great deal of talking about the plaintiff's having sworn falsely in the Stone case. These facts tended in some degree to show the animus of the defendant towards the plaintiff, and were otherwise proper matters to be considered by the jury.

We have given consideration to all the assignments of error insisted upon in argument. For the errors pointed out the judgment is reversed and the cause remanded.

Reversed and remanded.